1

2

3

4

5

6

7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DAVID RAYMOND ANDREWS,              )    No. C 11-2526 LHK (PR)
                                        )
            Plaintiff,                   )    ORDER GRANTING IN PART
11                                       )    AND DENYING IN PART
        v.                               )    DEFENDANTS' MOTIONS TO
12                                       )    DISMISS; GRANTING IN PART
                                        )    AND DENYING IN PART
13   J. AURELIO, et al.,                 )    DEFENDANTS' MOTION FOR
                                        )    SUMMARY JUDGMENT
            Defendants.                  )
14   _____)

15

16          Plaintiff, a California prisoner proceeding pro se, filed a second amended civil rights

17   complaint ("SAC") pursuant to 42 U.S.C. § 1983 against prison officials.  Plaintiff claims that

18   Defendants violated his right to due process.[1]  Defendants have moved to dismiss for failure to

19   exhaust and untimeliness and moved for summary judgment.  Plaintiff has filed an opposition,

20   and Defendants have filed a reply.  For the reasons that follow, Defendants' motions to dismiss

21   are GRANTED in part and DENIED in part, and Defendants' motion for summary judgment is

22   GRANTED in part and DENIED in part.

23                            **FACTUAL BACKGROUND**

24          The following facts are undisputed unless otherwise indicated.

25   _____

26          [1] Although the Court initially also directed Defendants to respond to Plaintiff's
     allegation of retaliation, Plaintiff has subsequently dismissed that claim.  (Opp. at 11.)  Thus,
27   Plaintiff's retaliation claim is DISMISSED without prejudice.

28

1    In September 2009, Plaintiff was housed at Pelican Bay State Prison ("PBSP").  On

2  September 15, 2009, Plaintiff was interviewed by Defendant Correctional Counselor Melton

3  ("Melton") regarding Plaintiff's upcoming Institutional Classification Committee ("ICC") annual

4  review hearing.  (Opp., Pl. Decl. at ¶ 2.)  During their discussion of the upcoming review,

5  Plaintiff commented that the "R" suffix added to his classification score was improper, and

6  requested that the "R" suffix be removed.  (*Id.* at ¶ 4.)  Because Melton directed Plaintiff to

7  submit his request in writing (Opp. at 5), Plaintiff, the following day, gave Melton a letter

8  explaining that Plaintiff had never been convicted of any rape-related charge and thus, the "R"

9  suffix was improper.  (Opp., Pl, Decl. at ¶ 5.)  As support for his claim, he submitted a certified

10  document from the California Youth Authority ("CYA") to Melton to present at his hearing.

11  (SAC, Ex. 4.)  The document listed Plaintiff's convictions for which he was sentenced to the

12  CYA.  (*Id.*)  Specifically, it listed, "602 W&I:  escape; assault to commit theft; exhibiting

13  firearm; robbery; and carrying a concealed firearm."  (*Id.*)  At the classification hearing, the ICC

14  was made up of Correctional Counselors Trujillo, Manion, and Melton.  Plaintiff submitted those

15  documents to Melton prior to the hearing so that they would be considered and recorded at the

16  ICC hearing on September 17, 2009.  (Opp., Pl. Decl. at ¶ 5.)  At the ICC hearing, it was

17  recorded that Plaintiff was voluntarily absent.  (Decl. Puget, Ex. B at 8.)  However, Plaintiff

18  asserts that he was absent because the prison was on lockdown.  (Opp., Pl. Decl. at ¶ 16.)  There

19  is no indication that the ICC discussed Plaintiff's challenge to the "R" suffix.  (Decl. Puget, Ex.

20  B at 8.)  Rather, it appears that the ICC mentions the designation, but presumably merely

21  continued the previous determination, initially designated in 2002.  (Decl. Duncan, Ex. D.)

22    Plaintiff alleges that Defendants Correctional Counselor Aurelio ("Aurelio") and Melton

23  were responsible for removing the "R" suffix or conducting a proper hearing.  (SAC at 7.)

24  Further, Plaintiff claims that Aurelio failed to respond to his inquiry regarding his administrative

25  appeal at PBSP, and contends that Aurelio conspired with Defendants Correctional Officer Oritz

26  ("Ortiz") and Classification Staff Representative Carriedo ("Carriedo") to increase his

27  classification score.  (*Id.* at 12.)  Plaintiff also sues Defendant Appeals Coordinator Walch

28

Order Granting In Part and Denying In Part Defendants' Motions to Dismiss; Granting In Part and
Denying In Part Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.11\Andrews526denymtdmsj.wpd

1   ("Walch") for failing to answer his administrative appeal pursuant to state procedures.  (*Id.* at 7.)

2                                     **DISCUSSION**

3   I.       MOTION TO DISMISS FOR FAILURE TO EXHAUST

4          Defendants move for dismissal for failure to exhaust administrative remedies.  PBSP

5   officials Melton and Walch assert that Plaintiff's appeal regarding the "R" suffix was screened

6   out at the second level of review.  California Substance Abuse and Treatment Facility ("SATF")

7   officials Carriedo, Aurelio, and Ortiz assert that Plaintiff did not submit any administrative

8   appeal to the third level regarding classification or custody prior to filing this federal lawsuit.

9          The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

10  provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

11  § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

12  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

13  Exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general

14  circumstances or particular episodes, and whether they allege excessive force or some other

15  wrong.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  PLRA's exhaustion requirement requires

16  "proper exhaustion" of available administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 94,

17  (2006).

18         The State of California provides its prisoners the right to appeal administratively "any

19  departmental decision, action, condition or policy perceived by those individuals as adversely

20  affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available

21  administrative remedies within this system, a prisoner must proceed through several levels of

22  appeal: (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal form; (3)

23  second level appeal to the institution head or designee; and (4) third level appeal to the Director

24  of the California Department of Corrections and Rehabilitation. *Barry v. Ratelle*, 985 F.Supp.

25  1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the

26  Director's level of review satisfies the exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

27         The obligation to exhaust persists as long as some remedy is available; when that is no

28

1    longer the case, the prisoner need not further pursue the grievance. *Brown v. Valoff*, 422 F.3d

2    926, 934-35 (9th Cir. 2005).  A prisoner need not exhaust further levels of review once he has

3    either received all the remedies that are available at an intermediate level of review, or has been

4    reliably informed by an administrator that no more remedies are available. *Id.* at 935.

5    Affirmative acts by jail or prison officials that disrupt or prevent the exhaust of administrative

6    remedies may make those remedies effectively unavailable. *Albino v. Baca*, 697 F.3d 1023,

7    1033 (9th Cir. 2012) *quoting Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

8        A.    "R" suffix custody classification

9        Here, Plaintiff claims that he filed an administrative appeal, PBSP 09-02900, requesting

10   that the "R" suffix be removed from his custody classification.  Defendants submit evidence that

11   Plaintiff received the first formal level of review's denial on November 24, 2009.  (Decl. Puget,

12   Ex. B at 2.)  The reviewer stated that Plaintiff's rap sheet noted that the CYA sustained an

13   adjudication of an offense that was equivalent to assault with intent to commit rape.  (*Id.*)  On

14   December 4, 2009, Plaintiff appealed that denial to the second level of review.  (Decl. Puget, Ex.

15   A.)  Defendants demonstrate that, on January 6, 2010, Plaintiff's appeal was screened out due to

16   a time lapse.[2]  (Decl. Puget, Ex. B at 11.)  The notice provided that if Plaintiff wished to continue

17   to appeal the matter, he must submit an explanation and supporting documents to explain why he

18   did not or could not have filed a timely appeal.  (*Id.*)

19       Defendants assert that because Plaintiff's "R" suffix was determined at his initial

20   classification hearing in 2002, his appeal to the second level of review was well beyond the

21   15-day deadline permitted in the regulations.  (Reply at 3.)  *See* Cal. Code Regs. Tit. 15,

22   § 3084.6(c) (2009).  Section 3084.6(c) states, "An appellant must submit the appeal within 15

23   working days of the *event or decision being appealed*, *or of receiving an unacceptable lower

24   level appeal decision*."  (Emphasis added.)  Here, Plaintiff received an "unacceptable lower level

25

26       ———————————

27   [2]  The notice states, "There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion."  (Decl. Puget, Ex. B at 11.)

28

1   appeal decision" on November 24, 2009 (Decl. Puget, Ex. B at 2), and submitted an appeal on

2   December 4, 2009 (Decl. Puget, Ex. A), which was within 15 working days.  Defendants'

3   argument that Plaintiff's appeal was screened out because he failed to submit an appeal within

4   15 working days of his initial "R" suffix designation in 2002 is not well taken.  It appears that

5   Plaintiff's appeal was improperly screened out, and thus, administrative remedies were

6   effectively unavailable.  *See Sapp*, 623 F.3d at 822-23.  The Court notes, however, that Plaintiff

7   does not explicitly make this argument.

8          Nonetheless, Plaintiff submits that he never received notice that his second level of

9   review appeal was screened out, nor was he ever instructed to submit any explanation of a time

10  lapse.  (Opp. at 9.)  He declares that on January 5, January 14, January 29, February 9, and April

11  13, 2010, he inquired about the result of his second level of review appeal, but received no

12  responses.  (SAC at 8-9, Exs. 9, 14, 15, 17.)  District courts have denied a motion to dismiss

13  based on exhaustion when a prisoner alleges that he has received no response to a complaint or

14  appeal.  *See Contreraz v. Stockbridge*, 2011 WL 2620367, *2 (E.D. Cal. 2011); *Exmundo v.*

15  *Scribner*, 2011 WL 2445868, *3 (E.D. Cal. June 15, 2011), *adopted by* 2011 WL 3322608, *1

16  (E.D. Cal. Aug. 2, 2011), *Gregory v. PHS, Inc.*, 2001 WL 1182779, *2 (D. Del. Sept. 21, 2001)

17  (holding that prisoner satisfied the exhaustion requirement when he filed a grievance and

18  received no response for such a long period of time that "it is safe to assume [it] exceeded the

19  amount of time allowed for prison authorities to respond under said grievance procedure"); *see*

20  *also Brown*, 422 F.3d at 943 n.18 (indefinite delay in responding to grievances renders an

21  administrative remedy unavailable) (collecting cases from other circuits).  Because Plaintiff

22  asserts, and Defendants do not dispute, that he never received the notice that his appeal was

23  screened out, the Court finds that Defendants have not satisfied their burden of proof that

24  Plaintiff has failed to exhaust his claim regarding the improper R suffix.  *Wyatt*, 315 F.3d at

25  1119.  Defendants' motion to dismiss is DENIED as to this claim.

26          B.     Increase in classification score

27          On February 2, 2011, Plaintiff was transferred from PBSP to SATF.  (SAC at 12.)  In his

28

1    SAC, Plaintiff argues that Aurelio conspired with Carriedo and Ortiz to increase his

2    classification score. (*Id.*)  Defendants respond that a search of the CDCR's third level of review

3    appeals filed by Plaintiff demonstrates that, after February 2, 2011, Plaintiff only exhausted one

4    appeal at the third level.  (Decl. Lozano at ¶ 4.)  That appeal was exhausted on March 9, 2012.

5    (*Id.*, Ex. A.)  Further, Plaintiff's only grievance regarding custody or classification issues that

6    was submitted to the third level was screened out on April 12, 2012.  (*Id.* at ¶ 5.)

7            Plaintiff does not argue that he did not exhaust this claim.  Moreover, the evidence shows

8    that he did not exhaust any grievance after his arrival at SATF but prior to the filing of his SAC.

9    (Decl. Lozano at ¶¶ 4-5, Ex. A.)  Because Plaintiff does not allege that he ever filed an

10   administrative grievance at any level challenging SATF Defendants' increasing his classification

11   score prior to filing his SAC, that claim must be dismissed.  *Rhodes v. Robinson*, 621 F.3d 1002,

12   1006 (9th Cir. 2010); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

13           Accordingly, Defendants' motion to dismiss is GRANTED as to Plaintiff's claim against

14   Carriedo, Aurelio, and Ortiz regarding an increase in his classification score.

15   II.      <u>MOTION TO DISMISS AS UNTIMELY</u>

16           Defendants also argue that Plaintiff's complaint is untimely.  They proffer that this action

17   accrued on November 26, 2002, the date upon which Plaintiff's initial classification hearing was

18   held while he was housed at Calpatria State Prison.  At that time, the ICC determined that

19   Plaintiff should have an "R" suffix custody classification.  Because Plaintiff's action accrued in

20   2002, argue Defendants, it has a three-year statute of limitations.  (MSJ at 9-10, citing Cal. Civ.

21   Proc. Code § 340 (West 2002)).  Plaintiff does not address the timeliness issue.[3]

22           Section 1983 does not contain its own limitations period.  The appropriate period is that

23   of the forum state's statute of limitations for personal injury torts.  *See Wilson v. Garcia*, 471

24   U.S. 261, 276 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  In California, the

25

26           [3]  Although Plaintiff states in his opposition that he was not aware that he was designated
27   with an "R" suffix until 2009, he submits contrary evidence that shows he has been trying to get
     the suffix removed since at least July 5, 2006.  (SAC, Ex. 20.)

28
     Order Granting In Part and Denying In Part Defendants' Motions to Dismiss; Granting In Part and
     Denying In Part Defendants' Motion for Summary Judgment
     G:\PRO-SE\SJ.LHK\CR.11\Andrews526denymtdmsj.wpd

1    general residual statute of limitations for personal injury actions is the two-year period set forth

2    at California Civil Procedure Code § 335.1, and is the applicable statute in Section 1983 actions.

3    *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva v. Crain*, 169 F.3d

4    608, 610 (9th Cir. 1999) (limitations period for filing Section 1983 action in California governed

5    by residual limitations period for personal injury actions in California, which was then one year

6    and was codified in Cal. Civ. Proc. Code § 340(3)); Cal. Civ. Proc. Code § 335.1 (current

7    codification of residual limitations period, which was enacted in 2002, is two years).

8        It is federal law, however, that determines when a cause of action accrues and the statute

9    of limitations begins to run in a Section 1983 action.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

10   Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of

11   the injury which is the basis of the action.  *See TwoRivers*, 174 F.3d at 991-92.  But accrual

12   ultimately depends on the substantive basis of the claim.  *See, e.g.*, *Wallace*, 549 U.S. at 388

13   (statute of limitations on a wrongful arrest/wrongful imprisonment claim begins to run when the

14   false imprisonment ends, when the plaintiff's confinement is no longer without legal process, but

15   rather becomes a confinement pursuant to legal process that is, for example, when he or she is

16   bound over by a magistrate or arraigned on charges); *Pouncil v. Tilton*, No. 10-16881, 2012 WL

17   5871659, *12-15 (9th Cir. Nov. 21, 2012) (claim that prison unlawfully denied prisoner conjugal

18   visits with his second wife in 2008 pursuant to a 1996 regulation was timely because it was an

19   independent, wrongful, and discrete act upon which his claim accrued, notwithstanding

20   prisoner's 2002 administrative grievance complaining of a denial of conjugal visits with his first

21   wife).

22       Here, the question of when Plaintiff's claim accrued depends on exactly what Plaintiff's

23   claim is.  Defendants argue that Plaintiff is challenging issuance of the "R" suffix.  (MSJ at 9.)

24   While it is true that much of Plaintiff's SAC discusses his attempts to remove the "R" suffix

25   because it was improperly given, liberally construed, the Court reads Plaintiff's due process

26   claim to be that Defendants refused to address or correct his request to correct and remove the

27   "R" suffix at his ICC hearing on September 17, 2009.  (SAC at 7, 13, 14.)  *See, e.g.*, *Pouncil*,

28

1    2012 WL 5871659 at *5-6 (liberally construing pro se prisoner's complaint to allege a denial of

2    a 2008 decision because it was unclear whether the prisoner was challenging a prison regulation

3    or the 2008 decision).

4            In *Pouncil*, the Court recognized two different avenues to determine when a cause of

5    action accrues. *Id.* at *7-10; *compare Delaware State College v. Ricks*, 449 U.S. 250 (1980)

6    (concluding that a college professor's challenge to the termination of his tenure accrued when he

7    received a 1974 letter informing him of such termination at the end of the 1975 school year, and

8    not when the actual termination occurred in 1975), *and Knox v. Davis*, 260 F.3d 1009, 1014 (9th

9    Cir. 2001) (holding that an attorney's claim that her legal mail and visitation rights to prison

10   inmates accrued when she received a letter informing her of such on January 20, 1996, and not

11   when she continued to receive those denials up until she filed suit in 1997), *with National R.R.*

12   *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (concluding that a plaintiff's claim against his

13   employer for unlawful employment practices alleged discrete discriminatory acts, each of which

14   started the clock for the statute of limitations), *and Cherosky v. Henderson*, 330 F3d. 1243 (9th

15   Cir. 2003) (applying *Morgan*, and concluding that employees' did not assert any discrete act that

16   would have fallen within the statute of limitations). Here, Plaintiff's initial classification hearing

17   in 2002 designated an "R" suffix to his custody status. Although Plaintiff challenges the

18   appendage of the "R" suffix, his claim is more narrowly construed as challenging the denial of

19   his right to due process at the 2009 ICC hearing. Thus, Plaintiff has sufficiently alleged a

20   "discrete act" which triggered the statute of limitations clock to run on September 18, 2009 – the

21   day after his hearing.

22           The applicable statute of limitations to Plaintiff's claim is two years. *See* Cal. Code Civ.

23   Proc. § 335.1; *Colony Cove Props., LLC v. City Of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).

24   Plaintiff filed his federal complaint on May 12, 2011. Thus, his claim is timely. Defendants'

25   motion to dismiss this action as untimely is DENIED.

26   III.        MOTION FOR SUMMARY JUDGMENT

27           Defendants argue that they are entitled to summary judgment as a matter of law because

28

1  Plaintiff failed to sufficiently link them to the underlying claim, and because they are entitled to

2  qualified immunity.  The remaining Defendants are Aurelio, Melton, and Walch.

3      Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

4  that there is "no genuine issue as to any material fact and that the moving party is entitled to

5  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

6  the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

7  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

8  verdict for the nonmoving party.  *Id.*

9      The party moving for summary judgment bears the initial burden of identifying those

10  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

11  issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

12  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

13  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

14  opposing party will have the burden of proof at trial, as is the case here, the moving party need

15  only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.*

16  at 325.

17      Once the moving party meets its initial burden, the nonmoving party must go beyond the

18  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

19  genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

20  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

21  *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search

22  of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

23  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

24  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

25  moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

26      At the summary judgment stage, the Court must view the evidence in the light most

27  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

28

Order Granting In Part and Denying In Part Defendants' Motions to Dismiss; Granting In Part and
Denying In Part Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.11\Andrews526denymtdmsj.wpd

1   evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

2   forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

3   1158 (9th Cir. 1999).

4          Plaintiff alleges that Aurelio failed to remove the "R" suffix or conduct a proper hearing.

5   (SAC at 7.)  Specifically, Plaintiff states that he sent a request via an administrative appeal to

6   Aurelio to remove the suffix from Plaintiff's file.  (*Id.* at 12, Ex. 19.)  Plaintiff also alleges that

7   Walch failed to "answer[] the issue according to procedure."  (*Id.* at 7.)  However, there is no

8   constitutional right to a prison administrative appeal or grievance system.  *See Ramirez v.*

9   *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

10   Accordingly, Plaintiff's allegation that Aurelio and Walch improperly handled his inmate

11   grievances cannot be the basis for liability.  Moreover, Plaintiff does not allege that Aurelio or

12   Walch had any authority to remove the "R" suffix, or that they were involved in any hearing

13   regarding Plaintiff's classification.  Because there is an absence of evidence that Aurelio or

14   Walch proximately caused any deprivation of Plaintiff's right to due process, *see Leer v.*

15   *Murphy*, 844 F.2d 628, 633-34 (1988), they are entitled to summary judgment.  As such, the

16   Court finds it unnecessary to address Defendants' argument that Aurelio and Walch are entitled

17   to qualified immunity.

18          Plaintiff also alleges that Melton failed to remove the "R" suffix or conduct a proper

19   hearing.  (SAC at 7.)  Plaintiff claims that, on the advice of Melton, he gave her an

20   administrative appeal, a letter explaining his request, and supporting documentation to show that

21   he believed the "R" suffix was improper.  Plaintiff gave her these documents so that they would

22   be considered at his ICC hearing.  (Opp., Pl. Decl. at ¶ 5.)  Defendant Melton was present at the

23   hearing because she was part of the ICC.  (Decl. Puget, Ex. 2 at 8.)  As Defendants note, a

24   classification committee can reverse an "R" suffix evaluation by a previous institution's

25   classification committee if new and compelling information is obtained.  Cal. Code Regs. Tit. 15,

26   § 3366.1(b)(8).  Construing all facts in Plaintiff's favor, Melton, a member of the ICC at

27   Plaintiff's hearing, was provided with potentially new and compelling information regarding the

28

Order Granting In Part and Denying In Part Defendants' Motions to Dismiss; Granting In Part and
Denying In Part Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.11\Andrews526denymtdmsj.wpd

propriety of Plaintiff's "R" suffix.  Liberally construing Plaintiff's claim, he alleges that he was not given an opportunity to be heard at this hearing, and was absent because the prison was on lockdown.  The Court concludes that Plaintiff has alleged sufficient facts to link Melton to his due process claim.

Melton also argues that she is entitled to qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A Court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Defendants focus on the fact that Plaintiff received his "R" custody designation in 2002, and thus, the current Defendants have no liability.  As stated above, Plaintiff's claim is more narrowly construed as whether the Defendants denied him a right to due process by not affording him an opportunity to be heard at his 2009 ICC hearing in order to challenge the custody classification.  Thus, because Defendants' argument for qualified immunity does not apply to Plaintiff's claim, Melton's motion for summary judgment based on qualified immunity is DENIED.

IV.   REFERRAL TO PRO SE SETTLEMENT PROCEEDINGS

Prior to setting this matter for trial and appointing pro bono counsel to represent Plaintiff for that purpose, the Court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas.  The conferences shall be conducted with Melton, or her representative, attending by videoconference if they so choose.  If these settlement proceedings do not resolve this matter, the Court will then set this matter for trial and consider a motion from Plaintiff for appointment of counsel.

Order Granting In Part and Denying In Part Defendants' Motions to Dismiss; Granting In Part and
Denying In Part Defendants' Motion for Summary Judgment
G:\PRO-SE\SJ.LHK\CR.11\Andrews526denymtdmsj.wpd

**CONCLUSION**

1.      Plaintiff's retaliation claim is DISMISSED without prejudice.  Defendants' motion to dismiss for failure to exhaust is GRANTED in part and DENIED in part.  Plaintiff's claim against Carriedo, Aurelio, and Ortiz regarding an increase in his classification score is DISMISSED without prejudice.  Defendants' motion to dismiss the due process claim as untimely is DENIED.  Defendants' motion for summary judgment is GRANTED as to Aurelio and Walch, but DENIED as to Melton.

2.      The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claim in this action, as described above.  The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the Court a report regarding the prisoner settlement proceedings.  If these settlement proceedings to do not resolve this matter, Plaintiff can file a renewed motion for appointment of counsel, and the Court will then set this matter for trial.

3.      The Clerk of the Court shall mail a copy of the Court file, including a copy of this order, to Judge Vadas in Eureka, California.

4.      The instant case is STAYED pending the settlement conference proceedings.

IT IS SO ORDERED.

DATED:   1/31/13

LUCY H. KOH
United States District Judge